J. S14006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 791 MDA 2015 |
| | : | |
| TOBIAS KAVAUN BANKS, | : | |

Appeal from the Order Entered May 4, 2015,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0005493-2014

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 26, 2016**

This case concerns a motion to suppress evidence resulting from a vehicle stop. Herein, the Commonwealth appeals from the order of May 4, 2015, which granted Tobias Kavaun Banks' ("appellee's") omnibus pre-trial motion. We affirm.[1]

---

* Former Justice specially assigned to the Superior Court.

[1] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. ***Commonwealth v. Whitlock***, 69 A.3d 635, 636 n.2 (Pa.Super. 2013), citing Pa.R.A.P. 311(d). In ***Commonwealth v. Gordon***, 673 A.2d 866, 689 (Pa. 1996), our supreme court held that the Commonwealth may appeal the grant of a defense motion ***in limine*** which excludes Commonwealth evidence and has the effect of substantially handicapping the prosecution. As the trial court ruling excludes Commonwealth evidence, and the Commonwealth has certified that the effect of the ruling substantially handicaps the prosecution, we find that this appeal is properly before this court.

The trial court provided the following procedural and factual history:

> The Appellee was charged with two counts of Possession With Intent to Deliver for heroin and cocaine.[2]  The Appellee was also charged with a third count of Driving While Operating Privileges Suspended or Revoked.[3]
>
> On October 27, 2014, counsel for the Appellee filed a Motion for Additional Discovery and Motion to Extend Time to File Omnibus Pre-Trial Motion and Habeus [sic].  On December 2, 2014, a Hearing was held on the Appellee's motions at which testimony was taken and, at the conclusion of that Hearing, Appellee's counsel was given two additional weeks to file omnibus motions.  The Appellee submitted his Omnibus Pretrial Motion on December 15, 2014. Commonwealth filed their Commonwealth's Reply to Defendant's Omnibus Pre-Trial Motion on December 26, 2014.  On May 4, 2015, this Court entered an Order granting the Appellee's Omnibus Pre-Trial Motion.
>
> . . . .
>
> On July 11, 2014, Officer Vincent Monte performed a traffic stop on a gray Buick LaCrosse with an inoperable driver's side registration lamp. The vehicle in question is equipped with two license plate lights.  The dash cam in the officer's cruiser was not functioning as designed, so there is no video of the stop.  The Appellee, who was the driver, was able to provide the officer with the requested vehicle documents, but Appellee, despite his representation that he had a valid license, could not produce his license for the officer.  After consulting the computer in his cruiser and dispatch, Officer Monte ascertained that the Appellee's driver's license was suspended. As neither the Appellee nor his passengers had valid

---

[2] 35 P.S. § 780-113(a)(30).

[3] 75 Pa.C.S.A. § 1543(a).

licenses, and because the vehicle was partially blocking the lane of travel, the car was impounded.

On cross examination, Officer Monte stated that he is unaware of any policy allowing a driver to call a vehicle's owner to retrieve the vehicle and the Appellee was not offered any such chance to do so. During an inventory search, the officer located what he described as a large quantity of heroin and cocaine. Officer Monte told the Suppression Court that he was unaware, prior to the incident, that York City has an ordinance for impounding vehicles. And, Officer Monte was unaware of "any specific policy, manual, or procedure guide on the exact best practice for performing a vehicle inventory search." Yet, Officer Monte performed an inventory search prior to towing the vehicle in order to protect the police and tow operators from hazardous conditions in the vehicle and to ward against liability.

Trial court opinion, 8/20/15 at 1-4 (citations omitted).

The Commonwealth raises the following issues for our review:

1. Did the trial court err in granting Defendant's motion to suppress where the officers had probable cause to effectuate a traffic stop where the vehicle had an inoperable driver's side registration lamp?

2. Did the trial court err in granting Defendant's motion to suppress where the officers had reasonable suspicion to effectuate a traffic stop where the vehicle had an inoperable driver's side registration lamp?

3. Did the trial court err in determining that the evidence seized as a result of the traffic stop constituted "fruit of the poisonous tree?"

Commonwealth's brief at 4.

Having determined, after careful review, that the Honorable Michael E. Bortner, in his Rule 1925(a) opinion of August 20, 2015, ably and comprehensively disposes of the Commonwealth's issues on appeal, with appropriate references to the record and without legal error, we will affirm on the basis of that opinion. Most importantly, the trial court carefully and correctly distinguishes this court's recent opinion in ***Commonwealth v. Salter***, 121 A.3d 987 (Pa.Super. 2015). ***Salter*** reversed the suppression court's determination that the police lacked probable cause to stop the defendant's vehicle based on a traffic violation where there was no license plate illumination at all on the vehicle. ***Id.*** at 993. Instantly, the trial court determined that the stop of the vehicle was without probable cause because there was no testimony by the police officers that the license plate was not illuminated by a remaining license plate lamp on the vehicle.

Order affirmed.

Panella, J. joins the Memorandum.

Stevens, P.J.E. files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2016

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH                              :
        Appellant                        :
    v.                                   :        NO. CP-67-CR-0005493-2014
                                         :
TOBIAS KAVAUN BANKS,                     :
        Defendant/Appellee               :

COUNSEL OF RECORD:

Alissa Candida Cardenas, Esquire                    Dawn M. Cutaia, Esquire
Counsel for the Appellant                           Counsel for the Appellee


OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE
RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, docketed on May 7, 2015, that the

Commonwealth of Pennsylvania, by and through Assistant District Attorney Alissa

Cardenas, Esquire, appeals to the Superior Court of Pennsylvania the order we entered in this

case on May 4, 2015. Having considered all evidence, testimony, and relevant case law, the

Court now issues this Opinion in support of our May 4, 2015 Order.

I.    Procedural History

The Appellee was charged with two counts of Possession With Intent to Deliver for

heroin and cocaine. The Appellee was also charged with a third count of Driving While

Operating Privileges Suspended or Revoked.

On October 27, 2014, counsel for the Appellee filed a Motion for Additional

Discovery and Motion to Extend Time to File Omnibus Pre-Trial Motion and Habeus. On

1

December 2, 2014, a Hearing was held on the Appellee's motions at which testimony was taken and, at the conclusion of that Hearing, Appellee's counsel was given two additional weeks to file omnibus motions. The Appellee submitted his Omnibus Pretrial Motion on December 15, 2014. Commonwealth filed their Commonwealth's Reply to Defendant's Omnibus Pre-Trial Motion on December 26, 2014. On May 4, 2015, this Court entered an Order granting the Appellee's Omnibus Pre-Trial Motion.

In timely fashion, this Court received an appeal of our decision that was docketed on May 7, 2015. In accordance with Rule 1925(b) of the Rules of Appellate Procedure, on May 12, 2015, the Appellant was Ordered to file a concise statement of matters complained of on appeal. On May 14, 2015, the Court received Appellant's Statement of Matters Complained of On Appeal Pursuant to the Pennsylvania Rules of Appellate Procedure Rule 1925(b).

The Appellant appeals for the following reasons. First, the Appellant avers that this Court erred in finding there was no probable cause to stop the vehicle in question. Second, the Appellant believes we erred in ruling the stop unconstitutional because the officers had reasonable suspicion to stop the vehicle for inoperable equipment. Third, and finally, the Appellant states that we erred in our determination that the evidence seized was "fruit of the poisonous tree" that necessitated suppression.

2

## II.    Facts

On July 11, 2014, Officer Vincent Monte performed a traffic stop on a gray Buick LaCrosse with an inoperable driver's side registration lamp. (Notes of Testimony, 12/2/14, at 7-8.) The vehicle in question is equipped with two license plate lights. *Id.*, at 27. The dash cam in the officer's cruiser was not functioning as designed, so there is no video of the stop. *Id.*, at 7. The Appellee, who was the driver, was able to provide the officer with the requested vehicle documents, but Appellee, despite his representation that he had a valid license, could not produce his license for the officer. *Id.*, at 8. After consulting the computer in his cruiser and dispatch, Officer Monte ascertained that the Appellee's driver's license was suspended. *Id.*, at 8-9. As neither the Appellee nor his passengers had valid licenses, and because the vehicle was partially blocking the lane of travel, the car was impounded. *Id.*, at 9-10.

On cross examination, Officer Monte stated that he is unaware of any policy allowing a driver to call a vehicle's owner to retrieve the vehicle and the Appellee was not offered any such chance to do so. *Id.*, at 26. During an inventory search, the officer located what he described as a large quantity of heroin and crack cocaine. *Id.*, at 19. Officer Monte told the Suppression Court that he was unaware, prior to the incident, that York City has an ordinance for impounding vehicles. *Id.*, at 11-12. And, Officer Monte was unaware of "any specific policy, manual, or procedure guide on the exact best practice for performing a vehicle inventory search." *Id.* at 12. Yet, Officer Monte performed an inventory search prior to towing the vehicle in order to protect the police and tow operators from hazardous conditions

3

in the vehicle and to ward against liability. *Id.* at 15-17.

## III. Matters Complained of on Appeal

### A. Legality of the Stop

Though the Commonwealth has neatly broken down their matters complained of into three easily cognizable points, they all pertain to whether or not this Court erred in finding the vehicle stop to have been illegal. Whether under the lesser standard of reasonable suspicion for an investigatory stop or the higher standard of probable cause, the question is whether the stop was legal. If the stop was illegal, as we found, then, *per se*, the evidence regarding seized drugs is fruit of the poisonous tree.

Firstly, the Commonwealth's second matter complained of, regarding reasonable suspicion, is not relevant where the officer's statements clearly indicate that the stop was effectuated under the probable cause standard as there was nothing to investigate. Officer Monte did not equivocate in testifying to the following:

> We noticed that the vehicle in question, a gray Buick LaCrosse, Pennsylvania registration JNC7794, had an inoperable driver's side registration plate lamp. He was traveling south on Queen Street. We effected a traffic stop on it, pulled it over on the corner of Queen and Boundary Avenue in York City.

(N.T., 12/2/14, at 8.) This testimony is in accordance with the matter-of-fact statement in the Affidavit of Probable Cause that, "[a]t this time [the officers] stopped a gray Buick Sedan (PA Reg JNC7794) for an inoperable driver [*sic*] side registration lamp." There is no notion that the officers sought to investigate whether or not a license plate lamp was out; but, rather, the officers had concluded that this was the case and that they were going to perform a traffic

4

stop as a result. "If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle," but "[w]here a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop." *Commonwealth v. Salter*, --- A.3d ----, unnumbered (Pa. Super. Ct. 2015); 2015 WL 4626915, at 3. As the officer's testimony makes clear that they did not require further investigation for their conclusion, we believe our analysis is firmly locked into whether or not there was probable cause for the officers to make the stop.

Evident from our citation *supra*, we are aware of *Commonwealth v. Salter*, in which our colleague, the Honorable Richard K. Renn's suppression of evidence on similar facts was overturned. From our review of case law, it is the case most relevant to an understanding of the case before us. In *Salter*, an officer suspected that a vehicle he was following did not have operable license plate illumination and the officer confirmed this suspicion by turning off his own headlights. *Id.*, at 1 (citing Trial Court Opinion, 6/5/14, at 2-3 (citations to the record omitted)). The Superior Court found that because the seemingly singular license plate lamp was out, "the plate was not illuminated, which in turn meant that the registration plate could not have been visible." At first blush, the *Salter* case appears *illuminative* of the present matter. We believe, however, that it is factually distinguishable.

Whereas the vehicle in *Salter* seems to have been equipped with just one license plate lamp, the Appellee's vehicle had two. (Notes of Testimony, 12/2/14, at 27.) The purpose of

5

license plate lamps, as alluded to by the excerpt from *Salter* above, is to make a license plate visible. Nowhere in Officer Monte's testimony before this Court or in the Affidavit of Probable Cause do we find any indication that the officers were unable to view the Appellee's license plate. Were the officer to have told this Court that he was only able to view a partial plate number, or that he could not make out the plate at all, then we would have had no trouble finding that there was probable cause to stop the vehicle. In addition, there was no evidence before this Court that the officers did anything to confirm their suspicion such as momentarily deactivating their own headlights, which the officer in *Salter* did.

In examining the construction of the relevant sentence in the officer's Affidavit of Probable Cause and the officer's testimony, we found that the officers were able to view the license plate number prior to stopping the vehicle. The Affidavit reports the vehicle license plate number prior to noting that the vehicle was stopped. Officer Monte repeated this phrasing at the Suppression Hearing. On our facts, we found the officers could make out the alphanumeric scheme of the plate. Moreover, 75 Pa.C.S.A. § 4303(b), which covers rear lighting of vehicles, states in relevant part:

> Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate *light*, in conformance with regulations of the department.

(emphasis added). This excerpt makes clear that a solitary license plate light is acceptable. Appellee's vehicle had a functioning light for its license plate. (Notes of Testimony, 12/2/14,

6

at 27.) Ergo, we encountered no facts that led us to believe the officers had probable cause to stop the Appellee.

The only manner in which the Commonwealth can possibly establish that the officers satisfied the probable cause requirement is through the legal analysis recited in their Commonwealth's Reply to Defendant's Omnibus Pre-Trial Motion. See unnumbered pages 2-3. For the sake of economy, we summarize the Commonwealth's argument as follows. Under 75 Pa.C.S.A. § 4704, officers may stop a vehicle to determine whether it conforms with state inspection requirements. And Commonwealth argues that 67 Pa.Code § 175.80 provides guidance in explaining that a vehicle should fail inspection if an exterior bulb that was originally equipped fails to properly light. Commonwealth reads this to mean that if a bulb fails to activate then a failure is indicated. Just as likely, the passage may be interpreted to mean that equipment must perform its function. And, where only a solitary license plate lamp is required and we found that the officers were able to read the Appellee's plate, the equipment performed as necessary. Semantics aside, suffice it to say, the Commonwealth seeks to thread a needle. However, this Court was unconvinced by the Commonwealth's proffered linkages. We simply viewed the Commonwealth's arguments as too attenuated and tortured in light of a plain reading of 75 Pa.C.S.A. § 4303(b).

Though we believe that the possibility of reasonable suspicion undergirding the stop has been foreclosed, we would be remiss in failing to address it properly. If probable cause was not met in this case then perhaps the officer could backslide to reasonable suspicion. The

7

*Salter* Court stated that the officer there "did not need to stop Appellee's vehicle to investigate further to determine if the plate lights were out, he possessed probable cause to legally make the stop." --- A.3d ----, unnumbered (Pa. Super. Ct. 2015), 2015 WL 4626915, at 4. However, it was noted in *Salter* that under the reasonable suspicion standard, "fog, rain, time of day, or obstructions impeding or blocking view of the plate illumination might prevent a clear determination if a lighting violation exists." *Id.* And, "[i]f reasonable suspicion exists that such a violation is present, *but a stop is required to confirm the violation*, then probable cause is not needed and reasonable suspicion *may* be sufficient." *Id.* (emphasis added). We did not read about any adverse conditions that would have prevented the officers from determining the status of license plate illumination sans investigatory stop. Rather, we encounter facts in which the officers were able to read the plate. Probable cause was either had or it was not; reasonable suspicion is not indicated.

Believing that probable cause and not reasonable suspicion is the appropriate standard in this case and that this standard was not met, the evidence seized was fruit of the poisonous tree. We, therefore, humbly request affirmance.

8

IV.  Conclusion

Based upon the reasons stated above, this Court respectfully urges affirmance of our May 4, 2015 Order in this case.

BY THE COURT,

DATED: August 20, 2015

MICHAEL E. BORTNER, JUDGE

9